411 So.2d 235 (1982)
William HARPER, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-570.
District Court of Appeal of Florida, Third District.
February 23, 1982.
Rehearing Denied April 5, 1982.
Pilafian & Schaffer and Melvin Schaffer, Miami, for appellant.
Jim Smith, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before SCHWARTZ and DANIEL S. PEARSON, JJ., and OWEN, WILLIAM C., Jr., (Ret.), Associate Judge.
OWEN, WILLIAM C., Jr., (Retired). Associate Judge.
William Harper, described as a nonviolent person by his friends and his employer who testified at his trial, was convicted of second degree murder. He should not have been, because the State's evidence (1) was legally insufficient to show that the act allegedly causing the victim's death was one which "evinced a depraved mind regardless of human life," and (2) essentially established rather than rebutted Harper's assertion that his act was a justifiable use of force, i.e., self defense. We agree that his motion for judgment of acquittal, made at *236 the close of the State's case, and renewed at the close of all of the evidence, should have been granted.
On Friday evening Harper was at Sutton's grocery store where he purchased a beer. One Courtney (apparently drunk at the time) asked Harper to buy him a beer. When Harper refused, Courtney shoved him and left stating, "I'm going to blow you up." A few minutes later Courtney returned with Smith (the victim) the latter carrying a stick the size of a chair or table leg. As the two men approached Harper, Smith raised the stick to shoulder height and stated to Harper, "You want this? Here it is." Harper, in fear that the two men intended to do him bodily harm in furtherance of the threat by Courtney, reached out, grabbed the up-raised stick, and brought it down on Smith's head. Smith was knocked down but stood up immediately, with no apparent wound or bleeding, and the incident was apparently over. The next day, a Saturday, Smith (who was known to be a very heavy drinker) was observed at various times throughout the day drinking alcoholic beverages. The following day Smith died. Whether his death was due to the blow from the stick was somewhat inconclusive. The coroner testified that there was evidence of only one blow to the victim's head, there were no open wounds or cuts and no evidence of external bleeding, and that Smith was an alcoholic with a diseased liver condition who could have died without being struck on the head, either as a result of hypertension, or high blood pressure or subdural hematoma. The most damaging evidence against Harper was the statement he gave the police in which, while stating that he was in fear that Smith and Courtney intended him bodily harm, he admitted that other than Smith stating, "You want this? Here it is," Smith uttered no other threats nor did he swing the stick nor make any violent motions. Harper testified to essentially the above facts, adding that he did not strike Smith in anger or with any desire or intention to kill him, and had acted solely in self defense out of fear of bodily injury to himself and that his motion in grabbing the stick which Smith held and striking Smith with it was defensive and was not done with sufficient force to cause any bleeding or cut or wound on the victim's head.
Reiterating the pronouncement in the initial paragraph of this opinion, the evidence was legally insufficient to show that Harper acted with a depraved mind regardless of human life, an indispensable element of the crime of second degree murder. See, Pierce v. State, 376 So.2d 417 (Fla. 3d DCA 1979); Martinez v. State, 360 So.2d 108 (Fla. 3d DCA 1978); Raneri v. State, 255 So.2d 291 (Fla. 1st DCA 1971). Although in both the Pierce case, supra, and the Martinez case, supra, the evidence was held sufficient to create a jury issue as to whether the accused had used excessive force (thus warranting a conclusion that the evidence would at least sustain a conviction of manslaughter), we conclude that in the instant case the evidence not only failed to sufficiently rebut Harper's claim of self defense so as to create a jury issue, but in fact essentially corroborated Harper's position. The State having failed in its burden of presenting evidence legally sufficient to contradict Harper's explanation of self defense Harper's version cannot be ignored, and his motion for judgment of acquittal should have been granted. State v. Bobbitt, 389 So.2d 1094 (Fla. 1st DCA 1980); Diaz v. State, 387 So.2d 978 (Fla. 3d DCA 1980); Ferguson v. State, 379 So.2d 163 (Fla. 3d DCA 1980); Neveils v. State, 145 So.2d 883 (Fla. 1st DCA 1962).
For instructive purposes we comment on Harper's second point. During the State's closing argument, the prosecutor stated:
In the bible it says to take a life is to take mankind and to save a life is to save mankind and all [Harper] did was kill a wino and he is sorry and so is [Smith's] wife and three children. They are sorry too.
Defense counsel objected and moved for a curative instruction. In response, the court, without directly ruling on the objection or the motion, stated (presumably in the presence and for the benefit of the jury):

*237 The jury heard the testimony from the witness stand and I previously advised them on arguments by counsel. I am sure they recall that.
The prosecutor's argument was an improper appeal to the jury for sympathy for the [supposed] wife and children of the victim, the natural effect of which would be an adverse emotional feeling toward the defendant. It is the responsibility of the prosecutor to seek justice, not merely to convict. That responsibility will be more nearly met when the jury is permitted to reach a verdict on the merits without counsel indulging in appeals to sympathy, bias, passion or prejudice. An admonition on this subject was given in the case of Breniser v. State, 267 So.2d 23 (Fla. 4th DCA 1972) wherein the court stated, at page 25:
[T]he real thrust of appellant's point here is the prosecutor's misconduct in appealing to the sympathy of the jury. Such is indeed improper, and while prosecutors should be commended for handling their duties with zeal, they would profit greatly by giving careful heed to the admonitions and restraints set forth in the numerous time-honored cases cited and discussed by Mr. Justice Drew in Grant v. State, Fla. 1967, 194 So.2d 612, some of which are also cited and discussed by Judge Mann in Chavez v. State, Fla.App. 1968, 215 So.2d 750.
A judge is charged with the responsibility of maintaining order and decorum in proceedings before the court. That responsibility includes the duty to restrain counsel in the use of improper argument. Blanco v. State, 150 Fla. 98, 7 So.2d 333 (1942). In the latter case the court quoted the following from Deas v. State, 119 Fla. 839, 161 So. 729 (Fla. 1935):
When it is made to appear that a prosecuting officer has overstepped the bounds of that propriety and fairness which should characterize the conduct of a state's counsel in the prosecution of a criminal case, or where a prosecuting attorney's argument to the jury is undignified and intemperate, and contains aspersions, improper insinuations, and assertions of matters not in evidence, or consists of an appeal to prejudice or sympathy calculated to unduly influence a trial jury, the trial judge should not only sustain an objection at the time to such improper conduct when objection is offered, but should so affirmatively rebuke the offending prosecuting officer as to impress upon the jury the gross impropriety of being influenced by improper arguments. (e.s.)
When counsel objects to improper argument and moves for a curative instruction, the trial judge should be firm and decisive in discharging his duty. Seldom will that be adequately done simply by reminding the jury that "... argument of counsel is not to be considered as evidence," or words to like effect.
The judgment and sentence are severally reversed and this cause remanded with instructions that William Harper be discharged forthwith.
REVERSED AND REMANDED.